trust, and is expressly authorized by statute to sue. Reade v. Waterhouse, 52 N. Y. 587; More v. Durr, 45 N. Y. Super. Ct. 157; Rielly v. Rosenberg, supra. The bankrupt law takes from the insolvent debtor his property, and from that time, including the appointment of the trustee, it is administered by the law under the direction of the court; and while the creditors, at their meeting held in court, may select the trustee, if they fail to do so the court appoints one, and general order 13 in bankruptcy makes the selection of the trustee by the creditors subject to be approved or disapproved by the referee or by the judge. The trustee is not, therefore, in any sense, the selection of the bankrupt, but is chosen as a part of the proceedings in the bankruptcy court. He is therefore an official assignee, within the meaning of section 3271 of the Code of Civil Procedure. It seems that the language of section 3271, Id., while general, is made so comprehensive as to include practically every person suing or sued in a representative capacity. It therefore follows that the right to compel a trustee in bankruptcy, whether a resident or nonresident, to give security for costs, rests in the discretion of the court, under section 3271, Id., unless the cause of action arose before the adjudication in bankruptcy. The moving papers are not addressed to the discretion of the court, and the argument proceeded solely upon the theory that the plaintiff was entitled to security as a matter of right. It may be, if the condition of the trust estate or some circumstances relating to the action were shown, that this would be a proper case for the exercise of discretion, and upon a new motion these facts may be shown. The motion is therefore denied, with $10 costs, but without prejudice to the right of the defendant to renew it upon allegations addressed to the discretion of the court.

Motion denied, with $10 costs.

---

(89 App. Div. 334.)

MENGLE v. McCLINTIC-MARSHALL CONST. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—TRESTLE—CONSTRUCTION—
APPEAL—PRESUMPTIONS.

Where, in an action for injuries to a servant by the collapse of a trestle which plaintiff had assisted in constructing, he proved by the person who had charge of the work of building the trestle under the orders of defendant's general superintendent that in his opinion the structure was not built in a reasonably safe manner, and questions tending to show that defendant had prepared specifications for the trestle and had superintended its construction were excluded on objection, it could not be presumed on appeal, in support of a judgment dismissing the complaint, that defendant did nothing more than furnish competent men and adequate material for the construction of the trestle, and that therefore any defects therein were the result of the negligence of plaintiff's fellow servants.

2. SAME—EVIDENCE.

In an action for injuries to a servant by the collapse of a trestle, evidence that defendant furnished plans and specifications for the construction of the trestle, and gave directions and orders during the progress of the work, and made an inspection of the material used therein, was admissible to show that defendant was responsible for the method adopted in the work which was alleged to be inherently dangerous.

Appeal from Trial Term, Kings County.

Action by Calvin Mengle against the McClintic-Marshall Construction Company. From a judgment in favor of defendant, and from an order denying plaintiff's motion for a new trial on the minutes, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

A. Delos Kneeland (Charles R. LaRue, on the brief), for appellant.

Frank Verner Johnson (E. Clyde Sherwood, on the brief), for respondent.

HIRSCHBERG, J.   The plaintiff was injured at Camden, in the state of New Jersey, while engaged as an employé of the defendant in the construction of certain ironwork for a building in process of erection on shipyard premises. In connection with the work a trestle had been erected, partly on land and partly in the Delaware river, to carry a tram track on which a car could be run for the purpose of transporting material to be used in the work of construction. While a car was being so run upon the track a portion of the trestle gave way, and the plaintiff was thrown into the river and severely injured. The trestle was built by certain workmen in the defendant's employ, of whom the plaintiff was one, and who are designated in the testimony as the "construction gang." The record does not disclose the reason why the trestle fell, whether it was because of faulty construction, or because of the employment of an unsafe or improper method in construction, or because of the use of defective material. The dismissal of the complaint was based upon the theory that, as the trestle was a scaffold merely, the duty of the defendant was fully discharged when it supplied sufficient and proper material to the men with which to build it, and that any negligence in the use of the material was that of a fellow servant of the plaintiff, for which his employer would not be responsible.

It may be that the ruling of the learned trial justice should be regarded as correct, if, upon the record as presented, we were permitted to assume that the defendant did no more than to furnish for the work sufficient competent men and adequate material, leaving to the men the entire construction of the trestle in such form and manner as they deemed safest and best. But giving to the plaintiff the benefit of every favorable inference, as we are required to do on this appeal, we are not at liberty to indulge in that presumption. In addition to his own evidence, the plaintiff produced as a witness the foreman or assistant foreman who had charge of the work of building the trestle under the orders of the defendant's general superintendent, and proved by him that in his opinion the structure was not built in a reasonably safe manner to sustain the weight which it was designed to bear. He was asked by the plaintiff whether any plans were furnished by the defendant for the construction of the trestle, whether specifications were also so provided, what directions or orders were given to him by the superintendent in regard to the work, whether any inspection was made of the material used in the work, and other questions

of a similar character, which, if answered, might have established, or, at least, have tended to establish, that the defendant was responsible for the method adopted in the work, and that that method was inherently dangerous, and had, because of its improper and dangerous character, in fact occasioned the accident. The questions were all excluded as immaterial and irrelevant, and the plaintiff took exception to the rulings. The learned counsel for the respondent justify the exclusion of the evidence referred to by the assertion that it was incumbent upon the plaintiff to first lay a foundation for it by proof that the method of construction was unsuitable, and that the structure was in fact improperly constructed pursuant to the defendant's instructions and orders. No authority is cited in support of the position, the point was not raised by the specific objections which were interposed, and in our opinion the position of the respondent is untenable in any view. The evidence was certainly relevant and material to the issue which was on trial. The object of the evidence was, we must assume, to show that the workmen were not in fact chargeable with the method actually adopted in the performance of the work, and that the collapse of the structure did not result from any negligence in detail incident to it, but that the structure was in fact furnished by the defendant itself, constructed under plans and specifications to which the workmen were obliged to conform, erected in accordance with orders emanating from it and issued through its general superintendent, and that it fell because of negligence in the adoption by the defendant of an improper plan and system. In the orderly presentation of proof the production of the plans prepared and furnished by the defendant would be the first step toward establishing either their existence or a defect in them, and indeed, until such production, direct evidence of the cause of the disaster might perhaps have been reasonably objected to, because no foundation had been laid to show that the defendant could be legally chargeable with it.

The object of the evidence was manifestly to take the case out of the operation of the many decisions of the courts which relieve a master from liability for defective scaffolding on the theory that it is something planned and built by themselves for their own convenience. We are not now called upon to determine whether those decisions necessarily control the case. But the rule is general that the master is responsible to his servant for his own negligence, and as the evidence which has been excluded might, if received, have been effective to bring this case clearly within that rule, and as we may not assume that the answers to the excluded questions, if given, would have been unfavorable to the appellant by establishing that the work in question was not done in conformity with the plans or in obedience to the orders of the defendant, or that, if so done, it was free from fault, there must be a new trial.

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.